234 F.3d 428 (9th Cir. 2000)
 JOSEPH SHWARZ, husband; BETH SHWARZ, wife; AMERICAN BOILER WORKS, INC., a California corporation, Plaintiffs-Appellants,
v.
UNITED STATES OF AMERICA; INTERNAL REVENUE SERVICE; UNITED STATES ATTORNEY, for the Central District of California; NORA M. MANELLA; STEVE HADLEY; AL BRYANT, Defendants-Appellees.
 No. 99-55618
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted October 11, 2000--Pasadena, California
Filed December 8, 2000
 
 [Copyrighted Material Omitted]
 COUNSEL: Robert S. Schriebman, Rolling Hills Estates, California, for the plaintiffs-appellants. John A. Dudeck, Jr., Tax Division, U.S. Department of Justice, Washington, D.C., for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California Lourdes G. Baird, District Judge, Presiding
 D.C. No.CV 97-8706 LGB
 Before: A. Wallace Tashima and Richard Tallman, Circuit Judges, and William Alsup, District Judge*
 Opinion by Judge Tashima
 OPINION
 TASHIMA, Circuit Judge:
 
 
 1
 Plaintiffs-Appellants Joseph and Beth Shwarz, and the corporation they own, American Boiler Works, Inc. (ABW), brought suit against Defendants-Appellees the United States, the Internal Revenue Service (IRS), and two IRS agents, Steve Hadley and Al Bryant, for unauthorized disclosure of tax return information under 5 U.S.C. S 552a and 26 U.S.C. SS 6103 and 7431, unauthorized tax collection actions under 26 U.S.C. S 7433, and violations of Fourth and Fifth Amendment rights under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). On Appellees' motion, the district court dismissed all but the S 552a claim, as to which the court subsequently granted Appellees' motion for summary judgment. We have jurisdiction over this timely appeal pursuant to 28 U.S.C.S 1291, and we affirm.
 
 I. BACKGROUND
 
 2
 Joseph and Beth Shwarz are the sole shareholders of ABW, which repairs steam boilers for dry cleaners. Steve Hadley and Al Bryant are employees of the IRS. Bryant was at all relevant times Hadley's supervisor.
 
 
 3
 At some time before September 1994, the IRS assessed a Trust Fund Recovery Penalty of $47,011 against Joseph Shwarz (Shwarz) for the period ending December 31, 1991,pursuant to 26 U.S.C. S 6672(a). It also assessed federal employment, unemployment, and withholding taxes of approximately $212,548 against ABW, for the years 1989, 1990, and 1991.
 
 
 4
 In September 1994, ABW submitted an offer in compromise of $22,075 for the 1989-1991 taxes owed by it and the trust fund penalty owed by Shwarz. The offer called for a onetime payment of $2,500, followed by monthly payments of $816, until the balance and interest were paid in full. The IRS accepted the offer.
 
 
 5
 Between November, 1994, and April, 1995, Shwarz caused ABW to pay a total of $5,800 to the IRS towards satisfaction of the offer in compromise. Shwarz also believed, based on a letter from his accountant, that the cash value of a life insurance policy that Shwarz owned that the IRS had levied on would be applied to the offer in compromise. At the time, the policy's cash value was approximately $19,000.
 
 
 6
 In April 1995, Shwarz stopped making payments to the IRS, believing that the $5,800 in payments, plus the $19,000 cash value of the insurance policy (i.e., a total of $24,800), had fully paid the offer in compromise of $22,075, plus accrued interest of approximately $3,500 (i.e. , a total of $25,575 due).
 
 
 7
 In April 1997, Hadley informed Shwarz that ABW's offer in compromise was in default. Shwarz told Hadley that he and ABW could not pay the amounts demanded, that ABW was current in its tax compliance, and requested an installment payment arrangement. Hadley "threatened" Shwarz with enforced collection in the form of closing down ABW and selling its assets. Appellants then submitted a new offer in compromise and also filed a Collection Appeal Request, but the IRS did not process the new offer.
 
 
 8
 The IRS then made an application in federal district court to enter the private business premises of ABW to effect a levy. Attached to the application was a supporting declaration from Hadley, dated June 19, 1997. In paragraph 4 of his declaration, Hadley asserted that on June 3, 1997, he requested Shwarz's consent to enter ABW's premises to effect the levy, but Shwarz refused. Because Hadley did not speak to Shwarz on June 3, 1997, this statement was false.[1]
 
 
 9
 The district court issued the Order for Entry. In describing the basis for the order, Judge Dean Pregerson stated that "[t]he Internal Revenue Service has sent notices and demands to the taxpayer, but the taxpayer has neglected or refused to pay the taxes owed," citing paragraph 4 and two other paragraphs of the declaration in support of this statement. Judge Pregerson did not refer to Hadley's having requested or Shwarz's having refused consent to enter ABW's premises.
 
 
 10
 Shortly thereafter, the IRS made a second application in district court, this time to enter the private personal and business premises of Shwarz to effect a levy. Attached to the application was a supporting declaration from Hadley, dated July 1, 1997. In paragraph 3 of the declaration, Hadley claimed that: (1) On June 3, 1997, he had visited Shwarz's business premises and observed several vehicles; (2) Shwarz stated that he owned the vehicles (the date on which Shwarz allegedly made this statement is not explicitly given); and (3) On April 17, 1997, Hadley "confirmed" with the California Department of Motor Vehicles that Shwarz owned the vehicles. Appellants again claim that some of this is false: They claim that Hadley did not observe the vehicles on June 3, 1997, and that Shwarz did not on that date tell Hadley that he owned them. In paragraph 4 of the declaration, Hadley again claimed that on June 3, 1997, he requested Shwarz's consent to enter to effect the levy, but Shwarz refused. This statement is false -Appellants assert, and Appellees apparently concede, that Hadley did not speak to Shwarz on June 3.
 
 
 11
 The district court issued the Order for Entry. In describing the basis for the order, Judge Tevrizian referred to Hadley's claims in paragraph 3 of the July 1, 1997, declaration. He also cited paragraph 4 in precisely the same manner as Judge Pregerson had, and he did not refer to Hadley's having requested or Shwarz's having refused consent to enter ABW's premises.
 
 
 12
 Pursuant to the Orders for Entry, the IRS entered both Shwarz's and ABW's premises to effect the levies. The IRSseized ABW's business assets, as well as real and personal property of Appellants, padlocked all entrances and exits, and posted seizure notices on the premises and assets.
 
 
 13
 Appellants then brought this action against the IRS and the United States for unauthorized disclosure of tax return information under 5 U.S.C. S 552a and 26 U.S.C.SS 6103 and 7431, against the United States for unauthorized tax collection actions under 26 U.S.C. S 7433, and against Hadley and Bryant for violations of their Fourth and Fifth Amendment rights under Bivens.
 
 
 14
 Appellees moved to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on various grounds. The district court granted the motion in part and denied it in part. It ruled that: (1) The claim under SS 6103 and 7431 was precluded by S 7433; (2) Appellants had failed to state a claim under S 7433 because they had not alleged in support of it any violation of the Revenue Code or regulations; and (3) A Bivens claim was unavailable in light of the exclusive statutory remedy of S 7433, and, in any event, Appellants had not been deprived of their constitutional rights, because the search and seizure were made pursuant to valid entry orders.
 
 
 15
 Only the S 552a claim survived the motion to dismiss. Appellees then moved for summary judgment on that claim. Appellants opposed the motion on the grounds that it was premature and that triable issues of material fact existed, but presented no affidavits or other evidence in opposition to the motion. The district court granted summary judgment to Appellees on the S 552a claim. This appeal followed.
 
 II. STANDARD OF REVIEW
 
 16
 A dismissal for failure to state a claim for which relief can be granted, pursuant to Rule 12(b)(6), is reviewed de novo. See Two Rivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).
 
 
 17
 A grant of summary judgment is also reviewed de novo. See Robi v. Reed, 173 F.3d 736, 739 (9th Cir. 1999).
 
 III. DISCUSSION
 A. Section 7431 claim
 
 18
 Section 6103 requires that tax returns and return information be kept confidential, subject to specifically described exceptions. See 26 U.S.C. S 6103. Section 7431 creates a private right of action against the United States if "any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information . . . in violation of any provision of section 6103." 26 U.S.C. S 7431(a).
 
 
 19
 Section 7433, however, creates a private right of action against the United States if "in connection with any collection of Federal tax . . . any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title, or any regulation promulgated under this title." 26 U.S.C. S 7433(a). Thus, a violation of S 6103 "in connection with any collection of Federal tax" is actionable under S 7433. Section 7433 further provides that, "[e]xcept as provided by section 7432 [dealing with damages for failure to release a lien], such civil action shall be the exclusive remedy for recovering damages resulting from such actions." Id. (emphasis added).
 
 
 20
 It is unclear both in Appellants' complaint and in their briefs precisely what they allege constituted unauthorized disclosures in violation of S 6103. It might be the "perjured" declarations of Hadley, it might be the seizure notices posted at the Shwarzes' and ABW's place of business, or it might be both. In any case, because all of those disclosures occurred in the course of tax collection activity, the district court correctly ruled that the S 7431 action is precluded by the exclusivity provision of S 7433.
 
 
 21
 No circuit has decided the question whether the exclusivity provision of S 7433 bars a S 7431 suit for unauthorized disclosure of return information when the alleged disclosure occurs in connection with tax collection activity, although the question has been presented before. See Mann v. United States, 204 F.3d 1012, 1017 (10th Cir. 2000) (reserving the "question of whether S 7433's exclusivity provision precludes an action under S 7431 where unauthorized disclosures are made in the course of collection activity").
 
 
 22
 The plain language of the statute supports the district court's conclusion that the S 7431 suit is precluded. Section 7433(a) states that the right of action it creates is the "exclusive remedy for recovering damages resulting from such actions," the actions being any activity "in connection with any collection of Federal tax" that is performed in "disregard" of any provision of the Revenue Code or regulations. See 26 U.S.C. S 7433(a).
 
 
 23
 As originally passed by the Senate, S 7433 did not contain an exclusivity provision. The conference agreement adding the provision makes clear, however, that, except forS 7432 actions, all other actions for improper collection activity are precluded by S 7433. See H.R. Conf. Rep. No. 100-1104, at 228-29 (1988), reprinted in 1988 U.S.C.C.A.N. 5048, 528889 ("[E]xcept as provided by new Code section 7432, an action brought under this provision shall be the exclusive remedy for recovering damages resulting from reckless or intentional disregard of a provision of the Internal Revenue Code, or a regulation promulgated thereunder, by an IRS employee engaged in the collection of any Federal tax.").[2]
 
 
 24
 Appellants argue that if Congress had intended to repeal S 7431 by the enactment of S 7433, it would have made its intent clearer by specific language. The argument lacks merit because the district court did not rule that S 7433 repeals S 7431. Under the district court's interpretation, with which we agree, S 7431 actions can still be brought for improper disclosures that do not occur in connection with tax collection (e.g., disclosures that occur in connection with the determination of tax liability). The district court ruled only that a suit for improper disclosures that occur in the course of collection activity must proceed under S 7433, not underS 7431.[3] As regards congressional intent to preclude S 7431 actions when S 7433 applies, the statutory language is more than adequately clear. Such a reading is also supported by the legislative history.
 
 
 25
 Appellants also rely on dictum from a Fifth Circuit case to the effect that "Congress intended collection activities . . . to be distinct from information handling." Wilkerson v. United States, 67 F.3d 112, 117 (5th Cir. 1995) (citing Venen v. United States, 38 F.3d 100, 106 (3d Cir. 1994)). Read in context, the quote is unpersuasive. Wilkerson and Venen addressed only the issue of whether improper collection activity (e.g., an unlawful levy) automatically renders disclosuresmade in the course of that activity improper (and hence actionable as a violation of S 6103). Each case held that it does not -collection activity and information handling are, in that sense, distinct. Neither case, however, addressed the S 7433 exclusivity issue; each found that there had been no violation of S 6103, and the S 7431 actions were dismissed on that ground. See Wilkerson, 67 F.3d at 117; Venen, 38 F.3d at 105-06.
 
 
 26
 Because the plain language of the statute, as well as its legislative history, support the district court's interpretation, we agree and hold that S 7433's exclusivity provision bars Appellants' S 7431 claim for unauthorized disclosures of tax return information because the alleged disclosures occurred in the course of tax collection activity.
 
 B. Section 7433 claim
 
 27
 Section 7433 creates a private right of action only for tax collection activity that violates some provision of the Revenue Code or the regulations promulgated thereunder. See 26 U.S.C. S 7433(a). The district court held that because Appellants, in support of their S 7433 claim, alleged only violations of the IRS Manual and an IRS National Policy Statement (NPS), and neither the manual nor the NPS is a code provision or a regulation, Appellants failed to state a claim under S 7433.[4]
 
 
 28
 The district court was correct in ruling that because the manual and the NPS are not code provisions or regulations, violations of the manual and the NPS cannot support a claim under S 7433. See Gonsalves v. United States, 782 F. Supp.164, 170-71 (D. Maine) (ruling that alleged violations of the IRS manual are insufficient to state a claim underS 7433), aff'd, 975 F.2d 13 (1st Cir. 1992) ; cf. Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (holding that an agency policy manual "is not a regulation," "has no legal force," and "does not bind" the agency). Accordingly, we affirm the district court's dismissal of Appellants' S 7433 claim.
 
 C. Bivens claim
 
 29
 The district court dismissed Appellants' Bivens claim on the ground that a right of action under Bivens for unconstitutional tax collection activity should not be implied by the courts, in light of the comprehensive and exclusive remedies provided by the Revenue Code and regulations, including S 7433. The district court's ruling is in accord with the holdings of several circuits. See Fishburn v. Brown , 125 F.3d 979, 982-83 (6th Cir. 1997); Vennes v. An Unknown Number of Unidentified Agents of the United States, 26 F.3d 1448, 145354 (8th Cir. 1994); McMillen v. United States Dep't of Treasury, 960 F.2d 187, 190-91 (1st Cir. 1991). We also have agreed with this view, albeit in dictum. See Wages v. IRS, 915 F.2d 1230, 1235 (9th Cir. 1990).
 
 
 30
 In the alternative, the district court held that, even assuming arguendo that a Bivens remedy is available, Appellants'Bivens claim should be dismissed because no Fourth or Fifth Amendment violations occurred. Because the district court found that the entry orders were supported by probable cause and hence were valid, it concluded that the entry upon and seizure of Appellants' property were constitutional. We agree with the district court that no constitutional violations occurred.[5]
 
 
 31
 Invasions of privacy by IRS officials in the course of tax collection activity are subject to the constraints imposed by the Fourth Amendment. See G.M. Leasing Corp. v. United States, 429 U.S. 338, 352-59 (1977) (" `[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.' " (quoting Camara v. Municipal Court, 387 U.S. 523, 528-29 (1967))). If the entry upon and seizure of Appellants' property were authorized by valid entry orders, those constraints were satisfied.
 
 
 32
 The district court found that the allegedly false statements in the Hadley declarations were not relied on by the court in issuing the entry orders. This finding, however, appears to be clearly erroneous. Each entry order cited paragraph 4 of the respective Hadley declarations, which contained the concededly false statements, namely, that on June 3, 1997, Hadley asked Shwarz for permission to enter the Shwarz/ABW business premises and was refused. In addition, the second entry order recited factual assertions from paragraph 3 of the second Hadley declaration that are allegedly false, namely, that on June 3 Hadley observed several vehicles on the Shwarz/ABW business premises and that Shwarz stated that he owned the vehicles.
 
 
 33
 Any error, however, was harmless, because even if the references in the orders to the falsehoods in the Hadley declarations show that the court relied on those falsehoods, that reliance does not invalidate the entry orders, unless the remaining portions of the declarations were insufficient to support a finding of probable cause. See United States v. Condo, 782 F.2d 1502, 1506 (9th Cir. 1986). Whether probable cause was lacking because of misstatements in the declaration in support of the application is subject to de novo review. See United States v. Hernandez, 80 F.3d 1253, 1260 (9th Cir. 1996).
 
 
 34
 The unchallenged portions of the declarations amply support a finding of probable cause. They show that: (1) The Shwarzes/ABW had outstanding tax liabilities; (2) Notice and demand have been made; (3) The Shwarzes/ABW have neglected or refused to pay; and (4) Property belonging to the Shwarzes/ABW and subject to seizure was on the premises to be searched. The false statement that on June 3 Hadley requested and was refused permission to enter is irrelevant to the probable cause determination. The allegedly false statement that Shwarz stated that he owned the vehicles on his property is unnecessary, in view of the unchallenged statement that Hadley confirmed Shwarz's ownership by checking with the California Department of Motor Vehicles. In addition, it is worth recalling that Appellants do not deny that the events described in the Hadley declarations took place; they deny only that those events took place on the dates stated.
 
 
 35
 Appellants argue that because these issues arise on a 12(b)(6) motion, it was error for the district court to go behind the face of the complaint to make factual findings on the basis of the Orders for Entry. It is true that the district court did look to the orders, as we have, in order to determine what the court issuing the orders relied on in making its probable cause determinations.
 
 
 36
 In reviewing a Rule 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true. See Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court, see Mullis v. United States Bankr. Court , 828 F.2d 1385, 1388 (9th Cir. 1987), and may consider documents that are referred to in the complaint whose authenticity no party questions, see Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994). For these reasons, the district court did not err in looking to the Orders for Entry, which were referred to in the complaint and attached thereto, to determine which provisions in the application the court relied on in making its probable cause determinations.
 
 
 37
 Because the issuing court's reliance on the falsehoods in the Hadley declarations does not undermine its findings of probable cause, the Orders for Entry were valid. Thus, the search and seizure were constitutional, and Appellants' Bivensclaim was rightly dismissed.
 
 D. Section 552a claim
 
 38
 In their opposition to Appellees' motion for summary judgment on the Privacy Act claim under S 552a,[6] Appellants argued that the motion was premature because the district court had not yet entered its order granting in part and denying in part Appellees' motion to dismiss (the court had only issued a tentative ruling). Appellants also asserted that the complaint contained "triable issues of fact," that their claim was "fact driven," and that the alleged improper disclosures were "factual issues," but they presented no evidence in opposition to the motion.
 
 
 39
 After entering its order granting in part and denying in part Appellees' motion to dismiss, the district court invited Appellants to file a properly supported motion under Federal Rule of Civil Procedure 56(f) requesting a continuance of the summary judgment motion in order to gather the necessary affidavits in opposition. The court did this despite the parties' prior stipulation to have the motion decided on the basis of the papers already filed. In spite of the court's generous invitation, Appellants made no Rule 56(f) motion or supplemented their opposition in any way.
 
 
 40
 When the nonmoving party has the burden of proof at trial, the party moving for summary judgment need only demonstrate "that there is an absence of evidence to support the nonmoving party's case." See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party makes this initial showing, the nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading," but must provide affidavits or other sources of evidence that "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).
 
 
 41
 Appellees carried their initial burden by pointing to a lack of evidence supporting Appellants' Bivens claim. Appellants produced no affidavits or other evidence in response. The district court's ruling on the summary judgment motion was therefore correct.
 
 IV. CONCLUSION
 
 42
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable William Alsup, United States District Judge for the Northern District of California, sitting by designation.
 
 
 [1]
 Appellants repeatedly characterize this and other misstatements in later declarations as "perjury." Hadley claims that they are merely "clerical errors," that he inadvertently misstated the date of the conversation. Appellants have not denied that the conversation ever took place; they have only denied that it took place on June 3, 1997.
 
 
 [2]
 Subsequent to the filing of this lawsuit, S 7433 was amended to cover negligent misconduct as well, but the amendment applies only to actions of IRS employees after July 22, 1998, and hence is inapplicable in this case. Liability for negligence is in any event irrelevant to the questions presented.
 
 
 [3]
 The distinction can be especially important with respect to damages. Section 7431 provides for a minimum of $1,000 in damages per unauthorized disclosure, and there is no statutory maximum. See 26 U.S.C. S 7431(c). Section 7433 provides for a maximum of $1 million in damages ($100,000 in the case of negligence), and there is no statutory minimum. See 26 U.S.C. S 7433(b).
 
 
 [4]
 It does fairly appear that Appellants, through the use of various "incorporation" paragraphs in their first amended complaint, also alleged violations of S 6103 in support of their S 7433 claim. However, because Appellants did not in their opening brief support their S 7433 claim by pointing to any specific code provision or regulation (including S 6103) that was allegedly violated, this matter has been waived. See United States v. Viramontes-Alvarado, 149 F.3d 912, 916 n.2 (9th Cir. 1998) ("[S]ince this matter was not specifically and distinctly argued in [appellant's] opening brief we need not consider it."); Miller v. Fairchild Indus., Inc., 797 F.2d 727, 738 (9th Cir. 1986).
 
 
 [5]
 Because we conclude that there was no constitutional violation, we need not reach the issue of whether a Bivens claim is available for Fourth and Fifth Amendment violations that are alleged to occur in the course of tax collection activity.
 
 
 [6]
 The Privacy Act provides that"[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person," subject to certain listed exceptions. 5 U.S.C. S 552a(b). The Act grants to an individual adversely affected by an unauthorized disclosure the right to "bring a civil action against the agency . . . ." Id. S 552a(g)(1).